## COMMERCIAL BANK, Indorsee of Walter Douglass, v. ROSS.

Court of Common Pleas.   Kent.   May 10, 1819.

*Clayton's Notebook, 90.*

*Ridgely* and *Hall* for plaintiff. *C. Rodney* and *Brinckle* for defendant.

Defendant's counsel were out of court when the cause was called, and plaintiff's counsel thought the witnesses for defendant were all present. When defendant's counsel came in, they asked of plaintiff's if all the witnesses were in court, who replied they were. This was a mistake, for after the jury were sworn it was discovered that E. Stapleford, a material witness, was absent. Defendant offered to make affidavit of his materiality, if the Court would postpone the trial for another day.

And the Court refused (saying it was duty of defendant to see to his own witnesses—other party not bound), "Had plaintiffs told you with a view to trick you into a trial, it had been otherwise. Here was merely a mistake in plaintiffs. But you may have the cause continued, both parties agreeing, or an attachment returnable forthwith." Defendant took the latter.

———

(Report by *J. G. Brinckle,* counsel for defendant.) [1]

Declaration in assumpsit. First count, on a promissory note drawn by defendant, Ross, in favor of Walter Douglass and indorsed by him to the plaintiffs, and the usual money counts. Pleas, *non assumpsit,* payment, discount and Act of Limitations, with leave to give the special matter in evidence.

The note was in the following words:

"January 5, 1815.

"Ninety-five days after date I promise to pay to Walter Douglass or order one thousand six hundred and sixty-eight

---

[1] It is not clear from the manuscript where, in the following extensive report of this case, Clayton ceased to rely on Brinckle's account.

dollars and ninety cents, without defalcation, for value recd. Negotiable at the Commercial Bank of Delaware and payable at the said bank in Milford."

*Ridgely* was about to prove the note.

*Rodney.* We do not deny the note. We mean to set up a defense of want of consideration.

The note was then read without any proof, and the plaintiff's counsel rested their case.

*Brinckle.* We shall lay before the jury evidence to show that the note was given for a fee simple interest in a tract of land; that no actual conveyance has ever been made to the defendant; that the vendor had merely a life estate in the land; and that these facts were known to the plaintiffs at the time the indorsement was made.

Jacob Biddle, who was cashier for plaintiffs in the branch bank at Milford at the time of the transaction, was sworn for defendant, and, before the examination of the witness in chief was gone through, in answer to some questions put to him by the counsel for plaintiffs, against the consent of defendant, stated that the note was discounted by the plaintiffs: the net proceeds, after deducting interest, passed to the credit of Douglass, the indorser, and since drawn by Douglass by drafts and checks in writing.

*Hall* contended that, it being in evidence that the bank had paid a full consideration to Douglass, the indorser, the defendant, could not go into any inquiry of the want or failure of the consideration of the note, or of notice to the bank. He relied on Chit.Bills (old edition) 51, 82.

*Brinckle.* Supposing the testimony of Mr. Biddle on his cross-examination fairly before the Court (and it is not, as he was cross-examined before our examination in chief had ended), yet it does not prove the payment of any consideration by the bank to Douglass. It is firmly established that the best evidence which the nature of the case will admit of must be produced. No evidence is sufficient which presupposes stronger, in the possession of the party. Now in this case it does appear that the proceeds were entered on a book; then that book is necessary to prove a payment to Douglass. The mere entry of the proceeds of the note to his credit was no payment. Perhaps the bank then direct the entry to be erased, or perhaps Douglass has never yet drawn the money, and it remains in the vault. Mr. Biddle says the money was paid upon checks and drafts drawn on the bank by Mr. Douglass in writing. They must be produced too. It is immaterial whether the bank has delivered up the

checks or not, for a *subpoena duces tecum* would bring them into court.

The Court, however, strongly intimated that the parol testimony of the witness was sufficient and that it was properly before the court and jury. (*N. B.* The books no evidence whatever.)

*Brinckle.* This is not the case of a mere failure of consideration. Here was a total want of it. The note was given for a fee simple interest in an undivided tract of land. No conveyance was given, nor any agreement in writing signed. (But note, here was a good consideration at all events, though it were admitted not to be at all beneficial to the plaintiff, for from the evidence it appeared that Ross agreed with Douglass to accept the sheriff's deed on Douglass striking out his own name. In fact, Reed, *semble,* will prove that Ross had accepted that deed and had it. Then by his desire Douglass had ruined his own title, and so here was a consideration injurious to plaintiff which is as good as one beneficial to defendant.) The defendant, finding, soon after the note was given, that Douglass had nothing more than a life estate in the land which consisted principally of woodland and wild marsh, refused to accept a conveyance and rescinded the contract. A man cannot be compelled to take what he never bargained for, and if the vendor cannot convey as great an estate as he agreed to convey, the vendee may refuse to accept a deed and may rescind the contract. 2 Pow.Con. 34, 3 Eq.Cas. Abr. 688, *Hibbert v. Shee and Another,* 1 Camp.N.P. 113. In the words of the Court in the case of *Hartley v. Pehall,* the vendee shall not be obliged to buy a law suit. Peake 131 (2 Com. Dig. 666, 4 Cranch 137, 5 Cranch 262).

The agreement for the sale of the land was by parol, and not in writing as prescribed by the Act of Assembly, 1 Del.Laws [327,] c. 136a, s. 3, and therefore void, so that Douglass never was bound thereby or could have it enforced against him. There was then, at the time the note was given, no consideration, and there has not been or can be any consideration, as Douglass never had or can convey such an estate as the defendant agreed for.

It is settled law that a promise made without consideration is void. And this principle, notwithstanding the loose expression to the contrary in 2 Bl.Comm. 446, extends to promissory notes as well as to parol promises. 1 Fon.Eq. 335. But it is said that this note has been negotiated, and a full consideration paid by plaintiff, and that those circumstances make a very material difference, and some loose opinions of the author contained in an old edition of Chitty on Bills have been cited.

We contend that the consideration of this note may be inquired into: first, because here, in this state, the indorsee of a promissory note takes it always subject to every equity affecting it in the hands of the payee; second, but if the English Statute, 3 & 4 Anne, c. 9, be in force in this state, yet there are circumstances in this particular case which will entitle us to look into the consideration of the note.

Choses in action, everyone knows, are not assignable at common law. Foreign bills of exchange were negotiable at common law by the custom of merchants, Chit.Bills (Am.Ed.) 20. And inland bills were at common law on the same footing, except as regards protest for nonpayment, which was first authorized by Statute, 9 & 10 Will. & Mary, c. 17, Chit.Bills 316, 577. But a promissory note is a mere chose in action and was not assignable before the Statute, 3 & 4 Anne, c. 9, *Carlos v. Francourt*, 5 Term 485; and, in fact, the preamble to that Statute declares that promissory notes were not previously assignable, Chit.Bills 580. It is further remarkable that that Statute was temporary, the last section providing that it should continue in force for the space of three years. It was afterwards made perpetual by Statute, 7 Anne, c. 25, s. 3.

This Statute is in derogation of the common law and operates by its express provisions, one of which is that promissory notes shall be assignable or indorsable over, in the same manner as inland bills of exchange are or may be according to the custom of merchants, and another that the indorsee may maintain his, her, or their action for such sum of money against the drawer or indorser in like manner as in cases of inland bills of exchange. All of the principles respecting promissory notes to be found in the English books since that Statute, have been taken from the laws of inland bills of exchange and are adopted by express statutory provisions altering the common law in that respect. The Statute, 3 & 4 Anne, c. 9, was enacted subsequent to the first settlement of this state, and is now in force [in England].

The principle of this subject is very clearly laid down by Chief Justice McKean, "It is the opinion of the Court that the common law of England has always been in force in Pennsylvania, that all statutes made in Great Britain before the settlement of Pennsylvania have no force here, unless they are convenient and adapted to the circumstances of the country; and that all statutes made since the settlement of Pennsylvania, have no force here unless the colonies are particularly named," *Morris' Lessee v. Vanderen*, 1 Dall. 67.

But independent of this rule of law, it appears most clearly from other circumstances and considerations that the Statute, 3 & 4 Anne, c. 9, is not in force in this state. We know that the dependent condition of this country upon Great Britain previous to the revolution rendered it necessary that the inhabitants should be acquainted with the particular Acts of Parliament; and copies of the English statutes must not only have been common but have been obtained in this country soon after their publication in the mother country. A slight examination of our early Acts of Assembly will establish the fact that many of them are mere transcripts of English statutes. It cannot be doubted but that copies of the Statute of 3 & 4 Anne had been received in this country, and its existence and specific provisions were known in the three lower counties of Delaware long before the eleventh year of George I, twenty-three years after it was enacted. About the eleventh [year of] George I our General Assembly passed an act making promissory notes indorsable. From which we draw two conclusions: first, that the English statute is not in force here, for otherwise the provisions of our Act would be useless and absurd; second, that our General Assembly did not wish to put promissory notes upon the same footing with inland bills of exchange, for the English statute was before them, and they might have copied it as they did in other cases.

In Virginia, Pennsylvania and other states having Acts of Assembly similar to ours, proceedings on promissory notes are at common law, except in cases expressly provided for by the Acts, *Manderville v. Riddle,* 1 Cranch 296; *McCollough v. Houston,* 1 Dall. 441; *Cromwell v. Winchester,* 1 S. & R. 182.

The common law principles then applicable to other choses in action, except so far forth as altered by our Act, 1 Del.Laws 117, c. 49a, still continue in this state to govern promissory notes. The question arises, what were these principles of the common law? They are perfectly clear and well settled.

First, that the payee of a note without consideration cannot recover in an action against the drawer or maker. This is a fundamental principle of natural justice and remains a fixed rule of law even in England, notwithstanding the Statute, 3 & 4 Anne, 1 Fon.Eq. 335, 1 Str. 674, 1 Esp.N.P. 37, Chit.Bills 17 n.b. 88a.

In the case of *Trye v. Guymme,* 2 Camp.N.P. 347, Lord Ellenborough in speaking of bills of exchange says, there is a difference between want of consideration and failure of consideration. The former may be given in evidence to reduce the damages, the latter cannot, but furnishes a distinct and independent cause

of action. In late cases decided in the states of New York and Massachusetts, where notes are negotiable as in England, it has been repeatedly decided that there is no difference between failure and want of consideration; that each may be set up as a defense between the original parties, Chit.Bills 88a, n. 2, and the cases there cited. And these later decisions are not repugnant to law or reason and are certainly more agreeable to principles of sound justice. Even in England then, that great commercial country, want of consideration may be set up by the maker of the note in defense in an action brought against him by the payee.

(BOOTH, C. J., assented to this proposition.)

*A* delivered to *B,* the master of a vessel and joint owner with *C,* a quantity of wheat to be carried to New York and sold there; and it was agreed between *A* and *C* that *B* should appropriate the proceeds of the wheat to the use of *C* in New York, and that *C* should make the same payment to *A* as *B* received; that is if the wheat was sold on credit and notes taken, *C* should give his notes of the same tenor to *A,* and if sold for cash then he was to pay the amount in cash to *A*. *B* sold the wheat on a credit in the usual course of trade and took *D.'s* notes at ninety days, payable to creditors of *C* in payment; and *C* gave his note to *A* payable in ninety days for the amount; but before *D.'s* notes fell due he failed, and *A* afterwards brought an action against *C* on his note. It was held that *A* could not recover against *C, Herring et al. v. Marvin et al.,* 5 Johns 393.

And in the case of *Mitchell v. Smith,* 4 Dall. 269, in an action on a bond, an instrument of much greater solemnity than a note, it was held by the Court that if one purchase a bad title ignorantly, and give his bond for the purchase money, the obligee cannot recover on the bond.

Second, it is equally well settled that at common law an indorsee could not sue on the note in his own name—the action must have been in the name of the payee, for the right of action continued in him, though the indorsement vested an equitable interest in the money in the indorsee. The payee might consequently, at law, even after the indorsement, release the drawer, who might set up that or any other defense in bar of a recovery which he might have set up had the note never been indorsed. This frequently drove the indorsee into Chancery, where he might sue in his own name.

Third, in Chancery it is a rule formed upon principles of justice and common sense that he who asks equity must do equity; and

it was there settled that the indorsee of a promissory note takes it subject to every equitable consideration or defense affecting it while it remained in the hands of the payee, *Carlos v. Tancourt,* 5 Term 485; *Turton v. Benson,* 2 Vern. 765; *Coles v. Jones,* 2 Vern. 692; 1 P.Wms. 383, 452, 459; Mod. 445. In equity a remote indorser has the same defense against the remote indorsee which he may have against the immediate indorsee, *Riddle v. Mandeville,* 5 Cranch 322, 331.

Such then being the common law, and the Statute, 3 & 4 Anne, c. 9, being out of the question, a remaining subject for consideration is, what alteration in the common law has been made by the Act, 1 Del.Laws 117, c. 49a. The evil intended to be remedied evidently was the power of the indorser at law to release etc. The remedy intended to be applied was to enable the indorsee to sue at law in his own name and so to obtain directly at law that redress which he might have previously obtained through the troublesome and expensive medium of a court of equity, and nothing more.

This we think clear to a demonstration. First, the second section, which gives the action, though it speaks of the "money contained in such note," expressly and positively declares that the suit and recovery by indorsee shall be in like manner as the person to whom the same was at first made payable might or could have sued for and recovered, that is, subject to every equitable defense against payee. Second, if this express provision needed explanation, it is illustrated by the third section, which declares releases, discharges, or payments made after the indorsement void—which admits the validity of any such defense or other equitable defense existing before the indorsement. Third, it is impossible to suppose, considering the situation of this country at the time of passing the Act, that the General Assembly could have intended anything further. Fourth, the Statute, 3 & 4 [Anne], must have been well known to the General Assembly, and the studied difference between the Act and the Statute shows a difference of intention—that it was not meant to put promissory notes on the same footing as inland bills of exchange. Fifth, bonds and notes are classed together by the Act—the same provisions respecting both. If notes be assimilated to bills of exchange, bonds must be also. The legislature has made no distinction between them, and this court cannot do it for them. Sixth, and it has been decided over and over again that the assignee of a bond does take it subject to every equitable defense which existed against the obligee; and no case decided in this state has or can be produced in which a different principle in regard to promissory notes has been established or even hinted at.

The propriety of our construction[2] will be further manifest from a consideration of the decisions in the state of Pennsylvania. The legislature of that state in the year 1715, about ten years before our Act, passed an Act in substance the same with ours and almost in the very words—the provisions contained in them are identically the same. In the case of *Wheeler, Assignee of Baynton, v. Hughes' Executor,* 1 Dall. 23, 28, which was the case of a bond: Chew, C. J., in delivering the opinion of the Court, said, "An assignee takes the bond at his peril, and he stands in the same place as the obligee, the only intent of the Act being to enable the assignee to sue in his own name, and prevent the obligee from releasing after assignment." The case of *McCullough v. Houston* was an action on a promissory note by indorsee against the maker and was agreed before all of the judges of the Supreme Court on a point saved at the trial. McKean, C. J., in delivering the opinion of the Court said, "We are unanimously of opinion that the indorsee of a promissory note does take it subject to all equitable considerations to which the same was subject in the hands of the indorser, the original payee," 1 Dall. 441, 444. And although it appears from some subsequent cases that Shippen, C. J., inclined to a different opinion, yet the principle of *McCullough v. Houston* was in the late case of *Cromwell v. Winchester,* 1 S. & R. 182, recognized as law by Tilghman, C. J., and the Court. Such was the settled law in Pennsylvania. In the year 1797 the legislature of that state passed an Act to extend the negotiability of notes somewhat further and to introduce some of the principles of the English law growing out of the provisions of the Statute, 3 & 4 Anne, c. 9, but it is remarkable that this Act is partial in its operation and extends only to Philadelphia. The legislature did not deem it necessary or expedient to pass a general law on the subject.

It is not the province of courts to legislate; it is their duty to say what the law is,—not what it should be. But if this Court was sitting in a legislative capacity—if the question was what ought to be the law—we might be able to show that it would not only be inexpedient but absurd to introduce principles only applicable to a commercial nation into the legal code of a state without commerce and addicted almost exclusively to agriculture; that the application of the law of inland bills of exchange to promissory notes would in this state be productive of much inconvenience and endless litigation.

BOOTH, C. J. Can what you contend for be the law in this case when the note is payable "without defalcation"?

---

[2] Manuscript reads, "constitution."

[*Brinckle.*] The use of those words is an argument in our favor. We admit we cannot offer any set-off, but we contend that the general use of the words "without defalcation" in notes most conclusively shows the general understanding on the subject to be that without them, the maker may in an action by indorsee set-off any debt due from the payee to him before the indorsement. The Act makes no difference between a set-off and any other equitable defense.

If we could avail ourselves in such a case of a set-off, we can here avail ourselves of the want of consideration. This is not like the case of an accommodation note. There the want of consideration is known to all the parties; the indorser voluntarily becomes the surety of his friend with his eyes open. But this is a real note of business, Ross supposed he was getting a consideration for the note, and it was known to the bank. Besides, every one knows, however little conversant in such matters, that had this been an accommodation note, it would have been differently drawn.

Booth, C. J. We do not consider this as an accommodation note, but it is made payable "without defalcation."

[*Brinckle.*] The word "defalcation" appears to me to be clear and definite in its meaning. It is synonymous with set-off. A plea of defalcation is the setting-off of one debt against another; it admits the debt. We do not pretend to make any set-off or defalcation; we deny that the debt ever existed. A defalcation is in effect a payment *pro tanto;* and there is as little resemblance between a defalcation or set-off and a defense founded upon a want of consideration, as between an allegation of payment and an utter denial that the defendant ever owed the plaintiff anything. It would be equally an abuse of terms to confound them.

But if our defense did come within the meaning of the expression "without defalcation," still we should not be precluded from making it; for we shall be able to show that the plaintiff had notice. In the case of *Cromwell v. Winchester,* 1 S. & R. 182, where payments had been made to a considerable amount on a note drawn with these very words, "without defalcation," and after it fell due it had been indorsed to plaintiff, the Court held that if plaintiff had notice of the payments the defendant was entitled to have them set-off, and that notice was to be implied from the time of the indorsement.

The words, "negotiable at the Commercial Bank of Delaware," considered with reference to the contract itself, are mere surplusage, for the note was by force of the words "or order" ne-

gotiable there as well as elsewhere. The reason of the use of these words and their effect are evident from an examination of the 18th section of the charter of that corporation. It provides that all notes offered for discount by any person shall on the face thereof be made negotiable at the Commercial Bank of Delaware, and when the drawer shall not reside in Smyrna or Milford, or within one mile, such note shall be made payable at the house of some person in one of said places, and further provides that where notes are so drawn, notice at the house where they are made payable shall be as binding upon the drawers and indorsers as personal notice would be. So that the sole intention in inserting these words and the succeeding ones in the note was that notice left at the banking house at Milford should be equal to personal notice.[3]

But if the English Statute, 3 & 4 Anne, c. 9, be in force in this state, yet there are circumstances in this particular case which will entitle us to look into the consideration of the note. Even in England since that Statute, where the holder of a note has notice either constructively or positively at the time of the indorsement to him of the want of consideration or any other equitable defense of the maker against the payee, he takes it subject to such equity, Esp.N.P. 37; *Haley v. Lane,* 2 Atk. 182; *Humphries v. Blight,* 4 Dall. 371; Chit.Bills 141b *in not.; Cobden v. Rendrick,* 4 Term 432. It is now held that there is no difference between a want and a failure of consideration, and that each may be set up as a defense, not only between the original parties, but also against a holder claiming by indorsement after the note has become due, or taking it with a knowledge of fraud, or other equitable circumstances entitling the maker to avail himself of the defense. Chit.Bills 88a *note z, and cases there cited.* So knowledge of facts by indorsee discharges former indorser, Chit. Bills 52 note o, 88a note z.

Such being the law under that Statute, the question arises, What would be legal notice to the plaintiff? It is evident that notice cannot be given to a corporation as such. It is a creature existing only in contemplation of law, yet there must be some mode of giving notice, otherwise it would be in the power of the corporation to commit the grossest frauds with impunity, which would be inconsistent with the common law principle that there is some kind of remedy for every evil. Notice to the members of the corporation would not be proper, for it would either be necessary to give notice to each individual member or stockholder,

---

[3] At this point, *Clayton's Notebook, 102,* the account of this case is interrupted; it is resumed at *131.*

which would be impossible, or notice to any would be sufficient, and it might so happen that those were not officers. By the charter of this corporation the directors are the persons who discount notes for the bank, and it would be more consonant to reason and more to the advantage of the corporation that notice to them should be the proper and legal notice. Considering the subject in another and proper point of view, the directors of the bank are the agents of the corporation for discounting notes, and notice to the agent of a party is notice to himself. *Brotherton v. Hall et al.*, 2 Vern. 574, *Hiern v. Mill*, 13 Ves.Jr. 120.

So if one man confides to another the power of making contracts, he confides to him the power of furnishing evidence of the contracts; and if the contracts are by parol, the subsequent declarations of the agent are evidence, though not conclusive. *Meade v. McDowell*, 5 Binn. 197, 199.

We shall be able to show notice or knowledge of the want of consideration to have been had by the cashier and by two directors, one of whom was the indorser, Mr. Douglass. From which we shall contend: first, that the jury may infer that the others had notice, 1 S. & R. 183; second, that notice to one director is in point of law notice to all.

Notice to one of several parties to a bill is a notice to all, Chit. Bills 244. Where several persons are carrying on business together, notice to one of any matter connected with their business is notice to all: *Porthouse v. Parker et al.*, 1 Camp.N.P. 82; *Anderson v. Pope*, Camp.N.P. 404, note a. A gave his promissory note to *B, C, D* and *E*, who formed one great partnership. The partners afterwards became indebted to *A* and then indorsed the note to *B* and *C*, who were in trade separately from the other partnership; and it was held that *B* and *C* had, as members of the indorsing firm, implied notice of the debt due to *A* from it, and that *A* was entitled to set it off against the note in their hands, *Puller v. Roe*, Peake 197. Implied notice is as effectual as actual notice, 1 S. & R. 183.

Wherefore whichever way this question is considered, whether with reference to common law principles and our own Act, or the Statute, 3 & 4 Anne, c. 9, we are entitled to go into an inquiry of the want of consideration in this case.

*Rodney.* The best evidence which the nature of the case admits of should have been given of the fact that the bank has given a valuable consideration to Douglass for the note. The books and checks should have been produced. The fact then does not now appear. *De non apparente et de non existente, eadem est lex.* No valuable consideration therefore was ever given by the

plaintiff, and the ground of the objection made on the other side fails.

But admit for argument's sake that fact to have been duly proved. I have practised law during a quarter of a century and have never heard of such a principle being decided in any case as that advanced by the plaintiff's counsel.

There is no difference between the cases of a bond and of a promissory note, or, if there be any, it is favorable. If the obligor in a bond be let in to make all defenses which may have existed between him and the obligee in a suit by an assignee, and I presume that it will not be doubted but he may, *a fortiori*, in an action by indorsee against maker of a promissory [note], Shall the latter be let in to make such defenses? For there is less solemnity in promissory notes than in bonds.

The passage cited from Chit. Bills 512 refers only to bills of exchange, so in page 82 it is attempted to show a distinction between bills and notes. The same author admits that this would be a good defense between the original parties; and in page 52, old edition, it is laid down that a person taking a transfer of a bill after it is due is liable to all of the equity between drawer and payee. This is certainly good law. What are the reasons and principles of this determination? The note does not cease to become negotiable when it falls due; it may be negotiated afterwards. The true reasons are these: it is presumed that notes will always be paid when they fall due, either wholly or in part, unless there be some defense as want of consideration; and a note remaining unsatisfied after its maturity ought therefore to excite suspicions, and if any person will take an indorsement of it, the law considers that it was his duty to have inquired about it, and will presume that he had notice. Notice is implied. Notice there is the ground of the determination in that class of cases, and it is implied; *a fortiori*, in the present case should we be let in to make our defense, for we do not rely upon implication; we shall be able to make actual proof of notice.

The bank is here fighting the battles of Mr. Douglass and attempting to deprive us of the defense which we should have against him. The most correct and impartial course for the bank to have pursued would have been, after finding there was a dispute respecting the note, to have called upon Mr. Douglass, who received their money, to pay off the note, and thus leave him and Mr. Ross to contend upon an equal footing.

The reason assigned by Lord Coke why choses in action are not assignable is lest the great should have it in their power

to oppress the weak. I have no doubt but that reason exists in this case. The plaintiff, like one of the powerful individuals of old times, is attempting to compel the defendant to pay an unjust debt, which Mr. Douglass himself could not recover from him.

The provisions of the Pennsylvania Act of 1715 are exactly the same with those of our Act. And taking into consideration the local Act of 1797 and the decisions which have been referred to, there can be no doubt that the Statute of 3 & 4 Anne is not there in force. The words of the English statute are that notes shall be negotiable in the same manner as inland bills of exchange. The provision of our Act is very different. It is that indorsee may sue and recover in the same manner as the payee might or could. So that if we wish to know what defenses may be set up against indorsee, the Act tells us that he is to sue and recover in the same manner as payee, and consequently any defense which might be set up against the payee may be against the indorsee; and so fully aware was the legislature that this was the true meaning of the second section that they make a positive provision in the third section that no release, payment, or discharge made after the indorsement shall be available, all of which would [be] sheer nonsense if a different construction is to prevail.

By our Act [1 Del.Laws 118] too, bonds are put on the same footing with notes in every single particular, except that the assignment of bonds must be under seal and made in the presence of two witnesses, and the counsel for plaintiff is reduced to this dilemma: they must admit the case of bonds to be one way and contend that the construction of the same expression in relation to notes should be directly the reverse.

If this were an accommodation note, we admit that we could not maintain the defense we now contend for. The indorser or person lending his credit guarantees the payment of the note with his eyes open. He stipulates with the discounter to do so. It is the common case of surety. But this is a real note of business, and Ross never intended to be bound in an accommodation note. If he had known the facts, he never would have signed the note. His object was not to lend his credit but to secure the payment of a real debt.

There is no consideration, and he ought not to be, and is not bound to pay the money.

As to the expression, "without defalcation," it has been decided in Pennsylvania that even on such a note if a person will take, *sciens* it has been paid, he takes it subject to the equity.

But these words have nothing to do with our defense, and the maxim *expressio unius est exclusio alterius* applies.

Whenever a vendor sells what he cannot convey, the contract may be rescinded, and no specific performance will be decreed in equity. Madd. Ch. In a case in 9 Ves. Jr., one contracted to sell a freehold estate and had a term for 999 years, yet so strict is the rule that a man shall not be compelled to a thing different from what he bargained for, that the Court would not decree a specific performance.

The law is very clear, and whatever may be the opinion of the Court as to the propriety or expediency of it, they are yet bound by it. *Sic lex scripta est.* The Court cannot legislate.

*Ridgely.* The present case is not to be governed by the common law, but by our Act, by the practice and general understanding of lawyers on this subject. The note is peculiar in its form; it is payable without defalcation and negotiable at the Commercial Bank of Delaware. And the defendant in setting up this defense flies in the face of his own express agreement.

It is not necessary to advert to English or Pennsylvania cases, but the Statute of 3 & 4 Anne is in force here, for so far as the pleadings are concerned, the practice of our courts has recognized it. The form of declarations is the same with the English precedents under that Statute, and they conclude against the form of the Statute etc. I know of no judicial decision that the Statute is not in force here.

Our Act does not authorize any such construction as that given by the defendant. The indorser may recover the money mentioned in the note.

The Pennsylvania Act is essentially different: "It shall and may be lawful for the person or persons to whom the said bonds, specialties or notes are assigned, indorsed or made over; in his, her or their own name or names to commence and prosecute his, her or their actions at law for the recovery of the money mentioned in such bond, specialties or notes, or so much thereof as shall appear to be due at the time of assignment in like manner as the person or persons to whom the same was or were made payable might or could have done," 1 Pennsylvania Laws 108, Dallas' edition.

Our Act speaks only of the mode of suing when the words, "in like manner as the [payee] might" etc. Most of the cases cited for the defendant are of notes which were due at the time of the indorsement—such is the case cited from S. & R. The presumption in such cases is that the note has been paid. We ad-

mit that where a note has fallen due and is afterwards indorsed, the maker may be let in to show want of consideration.

The words "negotiable at the Commercial Bank of Delaware" have no reference to or connection with the provision for superseding the necessity [4] of personal notice to drawer and indorser.

It has been attempted to draw a distinction between accommodation and real notes. But how are banks to know when the note is real and when for accommodation? The form of a note cannot alter the rules of law or their application to these contracts. The proceeds of this note were in effect advanced to Ross. It was for his accommodation. It was to pay a debt which he then acknowledged to be due; and is it for him to say in this action that Douglass never gave him any consideration?

In what a situation would the country be, and indorsers in cases like the present, if drawers be allowed to allege and prove want of consideration? We had a right to examine Mr. Biddle, and the proof of the consideration paid by the plaintiff is material, no matter when or how it appears. The books of the plaintiff would be no evidence against the defendant. The payment of money to third persons must be proved by parol testimony, the checks would not do. The parol testimony of Mr. Biddle was therefore the best evidence that could be procured.

BY THE COURT. (BOOTH, C. J., WARNER and WAY, JUSTICES.) The principal question is whether the defendant can give evidence of the want or failure of consideration of this note.

The counsel for the defendant have contended that the Statute 3 & 4 Anne, c. 9, does not extend to this state. They appear to admit that if it does there is an end of the question. It is not necessary for us to decide whether that Statute is or is not in force here, but we will observe that any statute like it may be extended by practice and decisions of the courts. The Statute, 11 Geo. II, c. 19, about use and occupation has never been extended by any legislative act, yet it is acted under and is undoubtedly in force. All declarations or promissory notes are in conformity with the Statute, 3 & 4 Anne.

We conceive that our Act is very different from the Pennsylvania Act. Our Act does not authorize the defendant in suit by indorsee to go into evidence of equitable circumstances between him and the payee.

In England in actions by the payee against the maker, the want or failure of consideration may be gone into, but it is other-

---

[4] At this point, *Clayton's Notebook*, *137*, the account of this case is interrupted; it is resumed at *143*.

wise if the suit be brought by the indorsee, for he takes it on the credit of the maker. If fraud or illegality of consideration were alleged, the question would be different.

We are satisfied that the authorities read by the defendant's counsel are by no means repugnant to what we now declare to be the law. It ought to be remembered that the Pennsylvania courts possess an equity jurisdiction.

The defendant cannot show want of consideration. We believe that even our Act of Assembly would not support him in doing so; for instead of operating in favor of trade and commerce as expressed in the preamble, it would destroy them.

*Brinckle.* We wish to be distinctly understood by the Court. We have not admitted that, if the Statute, 3 & 4 Anne, has been extended to this state, there is an end of the question. On the contrary, we made it one of our points and contended that if that Statute were in force here, still on proving that the plaintiff had notice of the want of consideration at the time the note was discounted, we should be entitled to set up the defense; and such we contended is the law in England at this day. We wish the Court to determine this point.

[BY THE] COURT. This note is drawn "without defalcation," negotiable at the Commercial Bank of Delaware and payable at the said bank in Milford; that puts it on a footing with notes in England under the Statute, 3 & 4 Anne, c. 9. We will permit you to show collusion between the indorsee and the plaintiff, or actual fraud and notice of that, but not notice of a mere want or failure of consideration.

Defendant's counsel prayed and had leave to draw up a bill of exceptions: First, because the Court permitted plaintiff's counsel to cross-examine defendant's witnesses before the examination of him in chief was concluded. Second, because the consideration paid by the plaintiff to Douglass was not sufficiently proved. Third, because the defendant was not permitted to prove want of consideration between him and payee and notice of that fact to the plaintiff.

The Court and counsel for plaintiff were desirous that the jury should render a verdict and be discharged immediately, but defendant's counsel, apprehending that there might be some difficulty about the bill of exceptions, insisted that the jury should be kept in attendance until the bill should be drawn and sealed by the Court.

[BY THE] COURT. We will adjourn to three o'clock in the afternoon. In the meantime the exceptions can be put in form.

At the meeting of the Court in the afternoon (Tuesday, the 11th May) a bill of exceptions was tendered to the Court.

[BY THE] COURT. This bill states that the defendant offered to prove so and so. It ought not to state the allegations of the party as to what he can prove, but what he has proved. It ought to set forth facts.

Defendant's counsel. We have stated facts; we have set forth what we have offered to prove, and what the Court has refused to permit us to prove; and if the Court does not think proper to seal our bill, we proffer ourselves ready to go to trial and to make out the defense as we there state it. We certainly will not consent to go into the High Court of Errors and Appeals upon a bill of exceptions stating in the abstract that it was the opinion of the Court that "in a suit brought by indorsee against the maker on a promissory note, the defendant cannot go into evidence of want of consideration between him and payee, though indorsee has notice." That Court would say to us we do not sit to decide abstract questions of law—you have not shown how the principle has any relation or connection with your case. The Supreme Court of the United States so said in a similar case and refused to decide the question. *Hamilton v. Russel,* 1 Cranch 310, *Basse v. Smith,* 6 Cranch 233. Besides, we have admitted that in the case of accommodation notes the principle does not apply, and how would it appear to the superior court that this was not an accommodation note.

[BY THE] COURT. We cannot seal this bill as it now stands. Perhaps the counsel may be able to agree upon some form that will be acceptable to both parties and to the Court; and the cause can stand over until tomorrow for that purpose.

---

The next morning, Wednesday, [May] 12th, *Mr. Hall* informed the Court that the plaintiff was willing to go to trial and would consent that the defendant might give evidence to prove his defense, if he could.

And the trial went on.

The following question arose in the course of the trial. Douglass, the indorser, and one Adams were proved to have been directors at the time when the note was discounted. Defendant's counsel asked one of the witnesses whether Adams had ever told him that Douglass was present when the note was discounted and gave the directors any and what information respecting the note.

*Hall.* The declarations of Adams are not evidence against the plaintiff; besides Adams has been summoned as a witness by the defendant and is now in court and may be examined.

Defendant's counsel. Adams was one of the agents of the bank for discounting notes, and his declarations respecting any act of discounting is evidence against his principal. *Meade v. McDowell,* 5 Binn. 197, 199, 2 Vern. 574, 13 Ves.Jr. 120. Our having summoned Adams and his presence in court are altogether immaterial. If the defendant should succeed in his defense, the directors who discounted the note, and Adams among the rest, would be answerable to the bank for misconduct. It will therefore be the interest of Adams to defeat our defense.

BOOTH, C. J. It has been settled in the High Court of Errors and Appeals that a witness is bound to answer a question which may show that he is liable to be charged in a civil action, and that such answer could not be given in evidence in any suit against him.

[Defendant's counsel.] Adams is a stockholder in the Commercial Bank of Delaware and therefore directly interested in the event of this suit. He gains or loses by the event and could not be compelled to give evidence for the defendant. ([Note.] 1 Morg.Ess. 279, 280.) Whether he would or would not refuse to be examined, we know not; nor is it material—the court will not compel us to examine him. The plaintiff has been making proof of the declarations of the defendant. He is present in court, why not examine him.

BY THE COURT. Adams has been summoned as a witness, he is in court, and it does not appear that he would refuse to be examined. Under these circumstances, we are of opinion that you cannot prove his declarations.

———

The arguments before the jury were pretty much the same with the argument before the Court on the first and second days of the trial so far as the points of law were touched on.

———

On Thursday, the 13th May, the Court charged the jury as follows.

BOOTH, C. J. The defense set up is that the note was given without consideration, and that the plaintiff had notice of or knew it, and that the indorsement was fraudulent on the part of the

plaintiff. The jury will consider the evidence and determine whether the bank had notice. The Court do not consider that notice to one or two directors is in point of law equivalent to notice to the plaintiff.

Suppose, however, full notice to the bank. As between payee and drawer consideration may be inquired into. But where a note has been indorsed over, and the indorsee has paid full consideration to the indorser, notice is immaterial. It is otherwise, however, if the note be indorsed after it has fallen due. This opinion is not repugnant to any of the authorities.

It is not necessary to examine the difference between ours and the Pennsylvania Act, though it is certain there is a material difference.

The counsel for the defendant admit that if this were an accommodation note, their defense would not be good, because in them the party agrees to be bound. So in this case the defendant agreed that he would pay the money without defalcation. It was the understanding and agreement of the parties that the money should be paid to the bank as appears upon the face of the note. The bank paid Douglass a full consideration for the note, and the defendant should not now be permitted to set up this defense.

If the jury should be of opinion that there was fraud in the case, that would be a good defense, and they should find a verdict for the defendant. We are not disposed to controvert the principle that the jury have a right to judge both of law and fact. But the jury will admit that they are as much bound by the laws of the land as any other individuals, and we presume they will be guided by the opinion of the Court.

Verdict for defendant.

*Hall* moved for and obtained a rule to show cause why the verdict should not be set aside and a new trial granted.

———

On Friday, 14th May, *Brinckle* showed cause. A new trial ought to be granted to attain real justice, but not upon every point of *summum jus* to give a second chance to a hard action, *Farewell v. Chappey,* 1 Burr. 54. This is to say at least a hard action. Mr. Douglass is a director of the bank. He received the money from the bank. He has not ever been sued on the note, though this suit has been depending four years. The probability is that all the directors knew of the want of consideration—in-

deed had we been permitted to prove the declarations of Adams, they would have gone far to prove the fact.

BOOTH, C. J. We had come to this determination to permit you to prove his declarations, if on being called he should refuse to testify.

[*Brinckle.*] We did not wish to examine a witness so deeply interested in the event of this suit as he was. It is not alleged that the money could [or] could not be recovered of Mr. Douglass. He is certainly liable to the bank and well able to pay the money. The defendant has never received from any person one cent of consideration for this note. Under these circumstances, we conceive that this is not only a hard action but a case—if a defendant be at all liable—of *summum jus,* of extreme right, and not to be favored by the Court.

*Hall.* This is a plain case; the verdict is against both law and evidence and ought to be set aside.

BY THE COURT. Let the verdict be set aside and a new trial granted.

*Brinckle.* We are entitled to the costs. Where a new trial is granted for the error or mistake of the jury, either in finding a verdict without or contrary to evidence, it is always upon payment of the costs of the former trial, 2 Tidd Pr. 823, 2 Burr. 665, 1 Burr. 12, 1 Str. 642. In the case of *Harper and Harper v. Bailey* in this Court, new trial was granted on payment of costs on ground of misconduct in a juryman, at May Term, 1802. In the case of *Reynolds v. Moore and Smith* in this Court, the verdict was against law and evidence, new trial was granted at May Term, 1807 on payment of costs. In the case of the *Lessee of Comegys and Baker v. Dawson and Brinckle,* also in this Court, the Court directed a nonsuit; the plaintiff refused to submit and got a verdict; a new trial was granted at May Term, 1803, but it was on payment of costs. This last case is much stronger than the present, and in the case of *Pierce v. Patterson* at October Term, 1815, the Supreme Court went so far as to say that they strongly inclined to the opinion that the party applying for the new trial should in every case pay costs.

*Hall.* In the last cited case of *Pierce v. Patterson* it is true the Supreme Court did make use of the expression which has been mentioned; but the case being mentioned the next day, the Chief Justice took occasion to say that on more mature reflection he doubted very much the propriety of the rule mentioned in that case respecting the granting of cost on new trials. In England there seems to be a difference when the verdict is contrary

to evidence simply, and where it is contrary to law and the judge's direction; in the former case costs are given, and in the latter they are not, 2 Tidd Pr. 823.

BOOTH, C. J. Where the jury render a verdict simply against evidence, costs are given on granting new trial, but where the verdict is contrary to the direction of the Court, costs are not given. WAY, J., is, however, of opinion that plaintiff should pay the costs in this case, and to prevent the cause being hung up on this point, I consent that the rule be made absolute on the payment of the costs of the term.

And the Court ordered the attendance of several witnesses who had not been examined to be allowed, on the allegation of defendant's counsel that it would have been unsafe for his client to have gone to trial without having them in attendance. (*De Benneville v. De Benneville,* 1 Binn. 46. *Commonwealth v. Wood,* 3 Binn. 414.)